**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**


MOLLY J. ALLEN,

        Plaintiff,

vs.

LINN COUNTY SHERIFF'S
DEPARTMENT, LINN COUNTY,
IOWA, and PUBLIC, PROFESSIONAL
AND MAINTENANCE EMPLOYEES,
LOCAL 2003,

        Defendants.

No. 04cv0083

-------------------------------------------------------

ROBERT A. BURROUGHS,

        Plaintiff,

vs.

LINN COUNTY SHERIFF'S
DEPARTMENT, LINN COUNTY,
IOWA, and PUBLIC, PROFESSIONAL
AND MAINTENANCE EMPLOYEES,
LOCAL 2003,

        Defendants.

No. 04cv0084

**ORDER**

_____

      This matter comes before the court pursuant to Defendant Public, Professional, and Maintenance Employees, Local 2003's (Defendant PPME) January 5, 2006 motions for summary judgment (docket number 22 in 04cv0083, docket number 21 in 04cv0084) and Defendant PPME's March 1, 2006 motions to strike portions of Plaintiff Molly Allen's and Plaintiff Robert Burroughs' affidavits (docket number 31 in each case). The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge in each of

these actions. For the reasons set forth below, Defendant PPME's motions for summary judgment (docket number 22 in 04cv0083 and docket number 21 in 04cv0084) are granted and Defendant PPME's motion to strike portions of Plaintiffs Molly Allen and Robert Burroughs' affidavits (docket number 31 in each case) are granted in part and denied in part as set forth in this Order.

## Statement of Material Facts Taken in a Light Most Favorable to the Plaintiffs

### A. The Plaintiffs' Claims

Plaintiffs Molly Allen and Robert Burroughs, (collectively the plaintiffs), brought this employment discrimination action against Defendants Linn County Sheriff's Department (Defendant Linn County), and Public, Professional, and Maintenance Employees, Local 2003 (Defendant PPME). The plaintiffs claim that they were discriminated against on the basis of perceived disability when their employment with Defendant Linn County was terminated, when Defendant PPME participated in a collective bargaining agreement (CBA) that effectively precluded reasonable accommodation of the plaintiffs' work-related medical restrictions, and when, leading up to and following their termination, Defendant PPME failed to fairly represent them in grievance and other proceedings. At all times relevant to these actions, Defendant PPME has been the exclusive bargaining representative of certain employees of Defendant Linn County, including the plaintiffs, as set forth in the CBA between Defendant Linn County and Defendant PPME. In their complaint, the plaintiffs contend:

> Defendant [PPME] participated in a contractual arrangement with Defendant [Linn County] that had the effect of subjecting [the plaintiffs] to discrimination on the basis of perceived disability, in violation of [the plaintiffs'] federally-protected rights. Neither Defendant attempted reasonable accommodation of [the plaintiffs'] perceived disabilit[ies] . . .
>
> This is additionally a pendant action under the Iowa Civil Rights Act of 1965 . . . Defendant [PPME] discriminated against [the plaintiffs], [members] of the bargaining unit represented by Defendant [PPME], in the privileges, rights, or benefits of membership in the bargaining unit because it

> regarded [the plaintiffs] as disabled, in violation of [the plaintiffs] state-protected rights.
>
> This is additionally a pendant action under the Iowa Public Employment Relations Act . . . against . . . Defendant [PPME] for their unlawful employment practices on the basis of disability, such unlawful employment practices being a breach of the collective bargaining agreement to which . . . Defendant [PPME was a party]. . . . Defendant [PPME] engaged in unfair employment practices whereby they discriminated against [the plaintiffs] because of [the plaintiffs'] perceived disabilit[ies] . . .

Count I of the plaintiffs' complaint alleges violation of the Americans with Disabilities Act (ADA), Title I. Specifically, the plaintiffs allege that they were asked to perform a "non-essential function" of their jobs, specifically working overtime, and that they requested[1] but received no reasonable accommodations. The plaintiffs assert that Defendant PPME's "employment practices . . . were violations of Defendant [PPME's] duty of fair representation owed to [the plaintiffs] and were ratification of Defendant [Linn County's] practice toward the plaintiffs." In Count I of the complaint, the plaintiffs further allege that Defendant PPME participated in a CBA, "which had the effect of subjecting [the plaintiffs] to the discrimination prohibited by the ADA," because the CBA in effect during the times relevant to this law suit "effectively preclude[d] any reasonable accommodation of disabilities or perceived disabilities such as [those of the plaintiffs']." Further concerning the CBA, the plaintiffs assert that the "seniority system involved in the overtime provisions of Article 7 of the [CBA], on its face and as interpreted by [the defendants], does not permit the reasonable accommodation of perceived or actual disabilities."

Count II of the plaintiffs' complaint alleges violation of the Iowa Civil Rights Act (ICRA) of 1965. Specifically, the plaintiffs allege that Defendant PPME, through their employment practices, "discriminated against [the plaintiffs, members] of the bargaining

---

[1] The reasonable accommodation requested by the plaintiffs was that the "non-essential function" of working overtime be assigned to other employees.

unit represented by Defendant [PPME], in the privileges, rights, or benefits of membership in the bargaining unit because [Defendant PPME] perceived [the plaintiffs] to be disabled."

Count III of the plaintiffs' complaint is brought pursuant to the Iowa Employment Relations Act, codified at Iowa Code § 20.17(5).[2] Specifically, the plaintiffs allege that Defendant PPME's employment practices violated Article 3 of the CBA, which provides in relevant part:

> Neither the Employer nor the Union shall engage in unfair employment practices whereby any person may be unlawfully discriminated against because of the age, race, creed, color, sex, national origin, religion, or disability of such person. . . . Neither the employer nor the Union shall discriminate against or interfere with, restrain or harass any employee with respect to his/her rights under the Act or in order to prevent or discourage his/her exercise of any such right.

The plaintiffs assert that as employees, they are third-party beneficiaries of the CBA and therefore have standing to bring an action pursuant to Iowa Code § 20.17(5) for breach of the CBA.

### B. Factual Background

Plaintiff Molly Allen (Ms. Allen) was employed with Defendant Linn County from approximately October 31, 1994, through February 2, 2004, as a communications operator (dispatcher). Ms. Allen suffered a stroke on December 22, 2000. She was hospitalized for a period of two weeks and diagnosed with lupus anticoagulant, which causes her blood to clot more rapidly than is normal. Following Ms. Allen's hospitalization, she was placed on medication. Ms. Allen's treating neurologist, Dr. Michael Rosenfeld, did not classify her as disabled. Dr. Rosenfeld indicated that Ms. Allen would be able to return to her job with Defendant Linn County.

---

[2] Iowa Code § 20.17(5) provides:
> Terms of any collective bargaining agreement may be enforced by a civil action in the district court of the county in which the agreement was made upon the initiative of either party.

On January 17, 2001, Ms. Allen was unable to maintain concentration for her full eight-hour shift, due to the lingering effects of her stroke. Ms. Allen then worked half-shifts until February, 2001. In February, 2001, Ms. Allen returned to work full time. Dr. Rosenfeld issued a medical restriction, directing that Ms. Allen was not to work more than eight hours in a twenty-four hour period.

Plaintiff Robert Burroughs (Mr. Burroughs) was employed with Defendant Linn County from September, 1990, through February 2, 2004, as a dispatcher. In February, 2000, Mr. Burroughs was diagnosed with left lower extremity deep venous thrombosis. Because of his condition, Mr. Burroughs suffers chronic swelling which is increased if he remains in a dependent position throughout the day. He is unable to walk for long periods of time because of the swelling in his legs. Upon his release from the hospital, Mr. Burroughs returned to his position as dispatcher on a full time basis. By medical restriction, Mr. Burroughs is not to work more than eight consecutive hours in a twenty-four hour period.

The duties of the position of dispatcher include (1) dispatching emergency calls by radio, telephone, or teletype; (2) answering or dispatching all routine calls by radio or telephone; (3) maintaining a radio log; (4) operating teletype and computer trace systems; (5) operating a computer to receive needed information; (6) entering information onto a computer regarding warrants, tickets, missing persons, stolen property, etc.; and (7) filing and keeping records. The CBA does not state that overtime is an essential function of the position of dispatcher. At all times relevant to this lawsuit, mandatory and/or voluntary overtime were not included in the formal job description for the position of dispatcher.

Defendant Linn County had a seniority system in place for determining who would work overtime when needed. That seniority system is set forth in Article 7 of the CBA, and provides, in relevant part, as follows:

> Employees shall not be scheduled, nor shall they accept more than sixteen (16) hours of scheduled work, excluding mandatory training or meetings, within a twenty-four (24) hour period commencing with the beginning of the employee's

regularly scheduled shift. . . . Overtime required at the end of a work shift, as a continuation of work begun on that shift, will be the responsibility of the employee or group of employees performing the work during this shift. . . .

As far in advance as possible to the start of needed overtime work within a specific division, the supervisor shall make the opportunity to work such overtime available to the employees of that division. The overtime work will be offered on a rotational basis from a list of divisional employees established on the basis of position classification seniority. If too few qualified employees within the division are able to work overtime, the supervisor shall make the opportunity to work such overtime available to properly trained and/or equipped employees from another division on a rotational basis from a list of departmental employees established on the basis of County seniority.

In the event too few qualified employees are able to work overtime after utilization of the procedures set forth [above], the employer shall require employees of the division needing overtime to be worked to perform such overtime work which will be assigned on a rotational basis from a list of divisional employees established on the basis of least seniority according to position classification. . . . Overtime work will not be used as a disciplinary tool, either to punish or reward employees.

During the plaintiffs' employment with Defendant Linn County, they noticed that the voluntary and mandatory overtime provisions in Article 7 of the CBA, as set forth above, were not being observed according to the requirements set forth in Article 7, but rather the system was being manipulated by certain dispatchers and supervisors. The effect of this manipulation was that "voluntary" overtime often in fact became "forced" overtime, as workers would at times call in sick with the effect that their co-workers would be "forced" into overtime. The plaintiffs noticed that certain favored employees were more often being given the choice to work forced overtime or not, while certain disfavored employees were given no such choice. Defendant Linn County accommodated both of the plaintiffs' medical restrictions for some time, by ostensibly removing them from the forced overtime

rotation list and instead requiring other employees to work overtime shifts. Other dispatchers began to complain about the fact that neither plaintiff was being made to work overtime while the other dispatchers were required to do so.

During at least one meeting of the Labor Management Committee (LMC), the issue of overtime work and the plaintiffs' medical restrictions arose. Neither of the plaintiffs were contacted for their input concerning the issue or invited for discussion at the meetings. During some of the LMC meetings, proposals for remedying the issue of staff shortage and overtime were discussed, including the possibility of establishing twelve hour, as opposed to eight hour, shifts. It was further discussed during at least one of the LMC meetings that one of the reasons for the problem of staff shortage was employee medical leaves. By December, 2001, the radio room was staffed by a total of ten dispatchers: eight positions with set days off and set hours, and two "floater" positions which had no set days off and no set hours. Minutes from the December 26, 2001, LMC meeting indicate that the plaintiffs' medical restrictions had been "accommodated."[3] The LMC met again on January 9, 2002. The minutes from that meeting indicate:

> Work load differences as a reasonable accommodation[.] Employer presented handout obtained from legal counsel that contained mixed court decisions and opinions on this question. Noted that the collective bargaining agreement does address this in some form that [overtime] is responsibility of employee

---

[3] The minutes reflect, in relevant part, as follows:

> Two Communication Operators have a medical restriction which states they cannot work more than 8 consecutive hours in the same 24 hour period. One Operator bid to a position with a 'set' shift and the County is able to accommodate this medical restriction. The second Operator bid to a 'floater' shift and the County is able to accommodate this medical restriction for one floater position. The employees requiring this medical restriction will periodically provide physician verification of the need for the restriction at the request of the Captain assigned to the Radio Room.

on that shift, and there is a 2-hour voluntary early call-in or holdover, with rotation of other overtime.

> Management question: When forcing-in for [overtime], should two employees with restricted hours have their days off considered before forcing in other employees, so their 8 hour/day restriction is not violated?
> Union answer: Overtime could be forced on a day off, so as not to violate the 8 hour/day restriction, but these employees are probably at the top of the rotation list anyway, unless recently forced.

> Union question: Is working more than 8 hours/day an essential function of the job?
> Employer answer: It is not stated in the job description, but job applicants are informed of the overtime necessity.
> Union position: Employer has to make decision if employees are covered under ADA, and if more than 8 hours in a day is an essential function of the job.

Mr. Burroughs' doctor, Dr. Donald Hilliard, wrote a letter to Defendant Linn County on May 18, 2001, reiterating that Mr. Burroughs was not to work more than eight consecutive hours in a twenty-four hour period. Both of the plaintiffs were required on at least one occasion to work overtime shifts in violation of their medical restrictions. Both Ms. Allen's and Mr. Burroughs' eight hour medical restrictions were kept up to date at all relevant times.

Bruce McCormick, a fellow dispatcher, filed a grievance with Defendant PPME on March 28, 2003. Mr. McCormick's grievance stated, in relevant part:

> Forced to work day shift . . . I was forced-Both [Ms. Allen] and Kaye were here and both are ahead of me on the force list. . . . Per the contract we should be forced by rotation.

Mr. McCormicks' grievance was denied at both Steps 1 and 2, because the practice of skipping over some of the employees on the force list did not violate the CBA. Defendant Linn County also denied Mr. McCormick's grievance at Step 3, finding likewise that there had been no violation of the CBA. At some point in time following Ms. Allen's stroke and her subsequent return to work as a dispatcher, Mr. McCormick also filed a grievance or

complaint against Ms. Allen, alleging that she was creating a hostile work environment for Mr. McCormick.[4]

Joe Rasmussen, a union representative for Defendant PPME, urged Defendant Linn County to make a determination as to whether mandatory overtime was an essential function of the dispatcher job. Trude Elliot, Employment Relations Director for Defendant Linn County, sent a letter to both of the plaintiffs on May 28, 2003, which read, in pertinent part, as follows:

> According to our records you have a medical restriction from your physician that does not allow you to work more than eight consecutive hours in a twenty-four hour period. Due to staffing requirements, it is an essential function of the Communications Operator position to work overtime hours which may cause the hours of work to exceed eight hours (consecutive or not consecutive) within a twenty-four hour period.
>
> It is for this reason your ability to perform the essential functions of a Communications Operator must be evaluated. Captain Knott will notify you of an appointment with a physician at St. Lukes Hospital Work Well Clinic during the week of June 16, 2003 to determine if you are able to perform the essential functions of a Communications Operator with or without accommodations. You may want to consult with your physician for an updated evaluation and/or obtain medical information to share with the physician at Work Well.

Both of the plaintiffs' medical restrictions were re-affirmed by physicians from the Work Well Clinic.

Ms. Elliot presented both plaintiffs with long-term disability claim forms for forwarding to Madison National Life insurance company on January 8, 2004. Defendant Linn County terminated both of the plaintiffs' employment on February 2, 2004. No other

---

[4] This information is based on Ms. Allen's affidavit at paragraph 23, for which Defendant PPME filed a motion to strike. The court denied Defendant PPME's motion to strike paragraph 23 of Ms. Allen's affidavit, as discussed in the text of this Order.

jobs, other than the position of dispatcher, were offered, described, or made available to either of the plaintiffs by Defendant Linn County.

Ms. Allen and Mr. Burroughs filed grievances with Defendant PPME on February 5, 2004, asserting that Defendant Linn County's decision to terminate their employment because of their medical restrictions was unlawful. Their grievances were denied by Defendant Linn County at Steps 1 and 2, because working overtime was an essential function of the dispatcher job and neither of the plaintiffs could perform that essential function because of their medical restrictions. Union steward Kaye Hughes contacted Mr. Rasmussen, seeking his assistance with the plaintiffs' grievances. According to Ms. Hughes, Mr. Rasmussen indicated that he would not be of assistance and would be letting the plaintiffs "hand out to dry." Mr. Rasmussen and Ms. Elliot refused to proceed with the Step 3 grievance hearing because the plaintiffs had legal counsel present. The plaintiffs' grievances were then denied at Step 3 based on the plaintiffs' purported failure to attend and participate, even though both plaintiffs were present and willing to participate, but simply wanted their private counsel to be present. The plaintiffs' grievances were not pursued further by Defendant PPME.

### Defendant PPME's Motion to Strike Portions of the Plaintiffs' Affidavits

Defendant PPME filed motions to strike portions of the plaintiffs' affidavits. Specifically, Defendant PPME filed a motion to strike paragraphs 15, 20, 21, 22, 23, 24, 26, 27, 28, 29, 31, 33, 34, 35, 40, and 41 of Ms. Allen's affidavit and paragraphs 21, 22, 34, 38, and 39 of Mr. Burroughs' affidavit. Paragraphs 15, 21,24, 26, 27, 28, 29, 31, 33, 34, 35, 40, and 41 of Ms. Allen's affidavit and paragraphs 21, 22, 34, 38, and 39 of Mr. Burroughs' affidavit concern statements made by certain employees of Defendant Linn County.[5] Defendant PPME alleges that the statements set forth in these paragraphs

---

[5] Specifically, these paragraphs concern statements made by Sergeant Lyle Rusk (Linn County Communications Shift Supervisor), Sergeant James Houlahan (Linn County Communications Shift Supervisor), Captain David Knott (Linn County Communications Commander), and Sergeant Lynn Johnson (Linn County Communications Shift (continued...)

constitute inadmissible hearsay. The plaintiffs resist, arguing among other things that the statements are admissible as statements of a party opponent, pursuant to Fed. R. Evid. 801(d)(2)(D), which provides in relevant part:

> (d) Statements which are not hearsay. A statement is not hearsay if . . . (2) Admission by party-opponent. The statement is offered against a party and is . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . .

The court is satisfied that Sgt.'s Rusk, Houlahan, and Johnson, as well as Captain Knott, were employees of Defendant Linn County, and were acting within the scope of their employment when the statements at issue were made, such that the statements would fall within the hearsay exception set forth in Fed. R. Evid. 801(d)(2)(D) as against Defendant Linn County. However, the question remains whether such statements are admissible statements of a party-opponent as against Defendant PPME. In that regard, the plaintiffs have made no showing that Sgt.'s Rusk, Houlahan, and Johnson, or Captain Knott, are employees or agents of Defendant PPME, nor have the plaintiffs demonstrated that the statements at issue were made within the scope of such relationship. Accordingly, as to Defendant PPME, the statements cannot be accepted from the general rule against hearsay under Rule 801(d)(2)(D), as they are not admissions by a party-opponent as to Defendant PPME.[6] See Mahlandt v. Wild Canid Survival & Research Center, Inc., 588 F.2d 626

---

[5](...continued)
Supervisor), concerning the plaintiffs' being made to work overtime shifts in violation of their medical restrictions, and concerning the plaintiffs' pending and actual termination due to their medical restrictions.

[6] The court notes that while it has stricken the majority of the paragraphs at issue on the basis of hearsay, the court's ultimate determination that Defendant PPME's motion for summary judgment should be granted would not be affected even if the communications recounted in the stricken paragraphs were to be considered, because they do not establish a prima facie case against Defendant PPME.

(8th Cir. 1978) (Interpreting Fed. R. Evid. 801(d)(2)(D) to require a showing of agency, servant, or other relationship to justify admission of statement against a given party.)

Defendant PPME also objects to paragraph 20 of Ms. Allen's affidavit, which reads as follows:

> Starting in the Spring of 2001, I experienced predatory behavior by a limited number of my co-workers—behaviors that I had never experienced prior to the onset of my stroke and resulting medical limitations. For example, several people who were close friends before, now shunned me. Mr. Bruce McCormick, in particular, involved himself in a constant stream of what I considered to be petty, annoying acts, all of which had the effect of making me feel less welcomed and appreciated in the workplace.

Defendant PPME asserts that paragraph 20 should be stricken as hearsay. The plaintiffs argue that the statement is admissible because it is not being offered to prove the facts asserted, but rather is offered to show Ms. Allen's state of mind. Paragraph 20 is stricken as irrelevant. The plaintiffs have failed to demonstrate how the information set forth in paragraph 20 is legally related to the plaintiffs' claims against Defendant PPME.

Defendant PPME further objects to paragraph 22 of Ms. Allen's affidavit, which states:

> In the summer months of 2002, individuals in my hometown of Olin, Iowa, told me that my co-worker, Mr. Bruce McCormick, was making comments to the effect that I shouldn't have come back to work after my stroke because I 'wasn't right' in my head and that he, Mr. McCormick, was being forced to work an undue amount of overtime because of my eight-hour work day medical restriction.

Defendant PPME objects to paragraph 22 on the basis of hearsay. Fed. R. Evid. 805 provides as follows:

> Hearsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.

Fed. R. Evid. 805.  The plaintiffs have not demonstrated that any of the exceptions to the hearsay requirement apply to either layer of the hearsay statements in paragraph 22. Accordingly, paragraph 22 of Ms. Allen's affidavit is stricken.

Defendant PPME also objects to paragraph 23 of Ms. Allen's affidavit, which reads:

> In August 2002, Mr. McCormick, lodged a complaint with Sgt. Houlahan and Capt. Knott, against me, alleging that I was creating what Mr. McCormick described as 'a hostile work environment' for him.  I deny that I ever did such thing---- towards him or any other co-worker.

Defendant PPME asserts that paragraph 23 should be stricken on the basis of hearsay. Defendant PPME does not dispute the fact that Mr. McCormick filed the complaint, and the information is included elsewhere in the record.  (See Mr. McCormick's deposition, at page 31, at page 34 of Plaintiff Molly Allen's Appendix in support of her resistance to Defendant PPME's motion to strike.)  Defendant PPME's motion to strike paragraph 23 of Ms. Allen's affidavit is denied.

Defendant PPME objects to paragraph 42 of Mr. Burroughs' affidavit, which states:

> With respect to the application submitted by me to Madison National Life for disability insurance benefits, I learned from Madison National Life's representative that Linn County had supported the application with a copy of the Communications Operator's job description, which did not list overtime as an essential function of the position.  Therefore, as I was able to work, it clearly appeared to the insurer that I could perform the essential functions of the job.  I was thus disqualified from eligibility for disability insurance payments.

Defendant PPME objects to paragraph 42 on the basis of hearsay.  The plaintiffs argue that paragraph 42 should not be stricken because the statements do not involve any genuinely disputed material fact.  The plaintiffs further argue that "[w]ithout objection . . . evidence has been submitted by [the plaintiffs] . . . in the form of a business letter from Carl Eiche, Associate Claims Specialist, Madison National Life, to [Mr. Burroughs]. . . .  In the letter, the insurer states, 'The official job description provided by Linn County, IA for

"Communications Operator" does not sate that overtime work, or work in excess of 40 hours per week is mandatory. . . . Nor . . . state that work in excess of 8 hours per day is mandatory.' Additionally, the plaintiffs argue that the statements in paragraph 42 are not offered to prove the truth of the matters asserted, but rather to show Mr. Burroughs' understanding of events. The court finds that the information contained in paragraph 42 is irrelevant to the plaintiffs' claims against Defendant PPME. Specifically, whether Defendant Linn County provided a job description to Madison National Life that failed to indicate that mandatory overtime was an essential function of the dispatcher position, after Defendant Linn County had determined it was an essential function and that the plaintiffs could not perform the function due to their medical restrictions, is not relevant to the plaintiffs' claims against Defendant PPME in this case.

Finally, Defendant PPME moves to strike paragraph 46 of Mr. Burroughs' affidavit, which reads:

> Terminating Ms. Allen and me financially benefitted Linn County in one possible way-to the extent that hiring two new dispatchers resulted in paying less wages, benefits and vacation that were payable to us, as more senior employees with accrued benefits.

Defendant PPME objects to paragraph 46 because Mr. Burroughs "has no personal knowledge, nor has he shown that there is any evidence in the record, that Linn County reaped financial benefits because of [the plaintiffs'] discharge." The court agrees, and further strikes paragraph 46 as irrelevant to the plaintiffs' claims against Defendant PPME in this case.

## Summary Judgment: The Standard

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir. 1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations

or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which it will bear the burden of proof at trial, there are genuine issues of material fact." Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Although "direct proof is not required to create a jury question, . . . to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985) (quoting Impro Prod., Inc. v. Herrick, 715 F.2d 1267, 1272 (8th Cir. 1983)).

The nonmoving party is entitled to all reasonable inferences that can be drawn from the evidence without resort to speculation. Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1110 (8th Cir. 2001). The mere existence of a scintilla of evidence in support of the plaintiffs' position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiffs. Id. Although it has been stated that summary judgment should seldom be granted in employment discrimination cases, summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case. Helfter v. UPS, Inc., 115 F.3d 613, 615-16 (8th Cir. 1997). The standard for the plaintiffs to survive summary judgment requires only that the plaintiffs adduce enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence did not directly contradict or disprove defendant's articulated reasons for its actions. O'Bryan v. KTIV Television, 64 F.3d 1188, 1192 (8th Cir. 1995). To avoid summary judgment, the plaintiffs' evidence must show that the stated reasons were not the real reasons for the plaintiffs' discharge and that prohibited discrimination was the real reason for the plaintiff's discharge. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000) (quoting the district court's jury instructions).

## Conclusions of Law

### A. Counts I & II: The Plaintiff's ADA and ICRA Claims

Defendant PPME moves for summary judgment in its favor as to the plaintiffs' discrimination claims, set forth in Counts I and II of the complaint.[7] Specifically, Defendant PPME asserts that the plaintiffs are unable to generate a genuine issue of material fact concerning whether Defendant PPME perceived the plaintiffs as disabled, or whether the plaintiffs are qualified individuals with a disability. Defendant PPME further asserts that the plaintiffs have failed to present a genuine issue of material fact that Defendant PPME participated in an agreement, specifically the CBA, which precluded reasonable accommodation of the plaintiffs' perceived disabilities, in violation of the ADA. Finally, Defendant PPME asserts that the plaintiffs have not generated a genuine issue of material fact that Defendant PPME breached its duty of fair representation because it perceived the plaintiffs as disabled.

To establish a prima facie case of employment discrimination under the ADA and ICRA,[8] the plaintiffs must show (1) that they have a disability within the meaning of the ADA; (2) that they were at all times relevant to this action qualified to perform the essential functions of the job of dispatcher, with or without reasonable accommodation; and (3) that they suffered an adverse employment action because of their disability. Conant v. City of Hibbing, 271 F.3d 782, 784 (8th Cir. 2001) (citing Cooper v. Olin Corp. Winchester Div., 246 F.3d 1083, 1087 (8th Cir. 2001)).

---

[7] As set forth more fully in the Statement of Material Facts above, Counts I and II of the plaintiffs' complaint allege that Defendant PPME discriminated against the plaintiffs on the basis of perceived disability in violation of the ADA and the Iowa Civil Rights Act (ICRA).

[8] "Iowa courts look to the ADA, its regulatory interpretations, and its caselaw in construing a disability claim under the ICRA." Berg, 169 F.3d at 1144 (citing Fuller v. Iowa Dept. of Human Servs., 576 N.W.2d 324, 329 (Iowa 1998); Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997)).

"Within the meaning of the ADA, the term 'disability' includes . . . 'being regarded as having' . . . a physical or mental impairment that substantially limits one or more of the major life activities' of the individual." Conant, 271 F.3d at 784 (citing 42 U.S.C. § 12102(2)(C), 42 U.S.C. § 12102(2)(A)). Accordingly, individuals who are regarded as disabled, but not actually disabled, can still fall within the protection of the ADA. Id. (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999)). "'Major life activities' include 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" To establish that an individual is substantially limited in the life activity of working, the individual must show that they are limited from performing a class of jobs or a broad range of jobs within various classes. Berg v. Norand Corporation, 169 F.3d 1140, 1145 (8th Cir. 1999). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Berg, 169 F.3d at 1145 (citing 29 U.S.C. § 1630.2(j)(3)(I)). The ADA regulation pertaining to whether Defendant PPME treated the plaintiffs as disabled requires that the plaintiffs have impairments that do not in fact substantially limit their major life activities, in this case the major life activity of working, but Defendant PPME nevertheless treated the plaintiffs as having such limitation. See Taylor, 214 F.3d at 961.

Defendant PPME attacks the plaintiffs' prima facie case of discrimination. Specifically, Defendant PPME contends that the plaintiffs cannot demonstrate any genuine issue of material fact that they were perceived as disabled by Defendant PPME. Defendant PPME asserts that cases in this circuit and others have demonstrated that an individual is per se not perceived as disabled based solely on the inability to work more than forty hours in a work week. The plaintiffs resist, arguing that there are genuinely disputed material facts concerning whether Defendant PPME regarded the plaintiffs as disabled. The plaintiffs argue that Defendant PPME treated the plaintiffs' medical restrictions as substantially limiting the major life activity of working when, in fact, the plaintiffs' conditions were not so substantially limiting. The plaintiffs point to the following factual

17

bases as establishing that there are genuine issues of material fact concerning the issue of whether Defendant PPME regarded the plaintiffs as disabled:

(1)    Ms. Allen's stroke was witnessed by several co-workers and while she was suffering her stroke, she was attended to by several co-workers, some of whom were members of the Union.

(2)    Ms. Allen's return to work was gradual and when she finally returned to work "full time," it was with the medical restriction that she not work more than eight consecutive hours. The eight hour restriction is based on the premise that Ms. Allen's thinking processes are slowed and flawed after eight hours of consecutive work.

(3)    Some of Ms. Allen's co-workers, some of whom were members of the Union, engaged in some "predatory behavior" toward her following her return to work, including purposefully calling in sick in order to "trigger the potential demand by co-workers and Linn County management that she work overtime."

(4)    LMC meetings involved discussion by Defendant PPME and Defendant Linn County concerning the plaintiffs' medical restrictions and how to handle those medical restrictions, including the legal aspect of the situation.

(5)    Defendant PPME and Defendant Linn County were engaged in several conversations concerning whether working overtime was an essential function of the position of dispatcher.

(6)    Mr. Rasmussen, in his capacity as a representative of Defendant PPME, "championed" Mr. McCormick's grievance, which concerned the plaintiffs' being skipped over in the forced overtime rotation due to their medical restrictions. Mr. Rasmussen even threatened to pursue the matter to arbitration if Defendant Linn County did not explicitly define mandatory overtime as an essential function of the dispatcher job.

(7) Mr. Rasmussen failed to appropriately or adequately represent either of the plaintiffs in the grievance process, and instead "displayed an attitude of scornful disregard" toward them both. When Union Steward Kaye Hughes confronted Mr. Rasmussen about the situation, he admitted that he intended to let both plaintiffs "hang out to dry," in the grievance process.

The plaintiffs assert that "the Union's involvement in advocating Mr. McCormick's grievance, and threatening Linn County with arbitration if Linn County did not move in 'other channels' to resolve the issue of forced overtime, caused Linn County to focus upon [the plaintiffs], resulting in their employment termination." The plaintiffs also contend that Defendant PPME violated the ADA and ICRA by being party to a CBA which precluded accommodating the plaintiffs' perceived disability and by failing to represent the plaintiffs in the grievance process following the termination of their employment by Defendant Linn County.

The court finds that the plaintiffs have failed to present a prima facie case of disability discrimination by Defendant PPME under the ADA and ICRA because they have failed to generate a genuine issue of material fact that Defendant PPME regarded the plaintiffs to be excluded from a class of jobs or broad range of jobs from different classes based on their inability to work more than eight consecutive hours in a twenty-four hour period. See Berg, 169 F.3d at 1145; Taylor v. Nimock's Oil Co., 214 F.3d 957, 961 (8th Cir. 2000)). Nor have the plaintiffs demonstrated a genuine issue of material fact that Defendant PPME misclassified the plaintiffs as disabled, as would be evidenced by some record or history of records of such classification. See Taylor, 214 F.3d at 961. The Eighth Circuit Court of Appeals and other courts have found and has cited with approval cases finding that the inability to work more than a forty hour work week does not preclude an individual from performing a class of jobs or broad range of jobs. See e.g. Berg, 169 F.3d at 1145 (citing Miller v. City of Springfield, 146 F.3d 612, 614-15 (8th Cir. 1998) ("[D]isqualification from one's job of choice is not substantially limiting."); Brennan v. National Telephone Directory Corp., 850 F. Supp. 331, 343 (E.D. Pa. 1994)

("The inability to work overtime hardly makes plaintiff handicapped."). The court, in Berg, noted "[w]e find it hard to say that being limited to a 40-to 50-hour work week substantially limits one's ability to work." Berg, 169 F.3d at 1145 (citing Muthler v. Ann Arbor Mach., Inc., 18 F. Supp. 2d 722, 729 (E.D. Mich. 1998)).

Further, the court finds there is no evidence in the record before the court to indicate that Defendant PPME's conduct toward the plaintiffs in this case "involved an *ad hoc* determination" that the plaintiffs could not perform a category of jobs.[9] See EEOC v. CRST, Inc., 2003 WL 21073847 at *2 (N.D. Iowa 2003). The court finds that the plaintiffs have failed to demonstrate that Defendant PPME regarded the plaintiffs as disabled.

The court further finds that even if the plaintiffs were able to establish a prima facie case of discrimination by Defendant PPME, they have failed to establish a genuine issue of material fact that Defendant PPME breached its duty of fair representation based on discrimination. "In the Eighth Circuit, in order for a union to be held liable under the ADA [or ICRA], there must first be a finding that it breached its duty of fair representation." Wood v. Crown Redi-Mix, Inc., 218 F. Supp. 2d 1094, 1106 (S.D. Iowa 2002) (citing Martin v. Local 1513 & Dist. 118 of the Int'l Ass'n of Machinists & Aerospace Workers, 859 F.2d 581, 584 (8th Cir. 1988); Nweke v. Prudential Ins. Co. Of America, 25 F. Supp. 2d 203, 219 (S.D.N.Y. 1998); Schaefer v. Erie County Dept. Of Soc. Servs., 82 F. Supp. 2d 114, 118 (W.D.N.Y. 2000)). The Eighth Circuit has held that a union breaches its duty of fair representation when its conduct is "arbitrary, discriminatory, or in bad faith." Wood, 218 F. Supp. 2d at 1106-07 (citing Baxter v. United Paperworkers Intern. Union, Local 7370, 140 F.3d 745, 747 (8th Cir. 1998)).

---

[9] The court notes that there is evidence in the record that Defendant Linn County provided long term disability applications to the plaintiffs shortly before their employment was terminated. The court makes no finding concerning what effect such evidence may have on the plaintiffs' prima facie case as against Defendant Linn County, because the instant motion for summary judgment concerns only the plaintiffs' claims against Defendant PPME.

Such a claim may not survive unless it is first demonstrated that the relevant CBA was breached.  See Id. (citing Blount v. Local Union 25, 984 F.2d 244, 249 (8th Cir. 1993)). "The Seventh Circuit has formulated a test" for determining whether a union has breached its duty of fair representation based on discrimination.  That test is as follows:

> (1)    the employer violated the CBA;
>
> (2)    the union let the violation go unredressed; and
>
> (3)    that there was some indication of discriminatory animus motivating the union's behavior.

Wood, 218 F. Supp. 2d at 1107 (citing Bug v. Int'l Union of Allied Indus. Workers, Local 507 AFL-CIO, 674 F.2d 595, 598 n. 5 (8th Cir. 1982)).  The plaintiffs have asserted that their employer, Defendant Linn County, violated the anti-discrimination provision of the CBA.  The plaintiffs have not, however, generated a genuine issue of material fact that Defendant PPME let the alleged violation by Defendant Linn County go unredressed, and that there was some indication of discriminatory animus on the part of Defendant PPME in allowing the violation to go unredressed.  Evidence that Defendant PPME did not allow the plaintiffs to have counsel present at the Step 3 grievance meeting is insufficient to establish a claim of breach of fair representation.[10]  Likewise, Mr. Rasmussen's encouragement, on behalf of Defendant PPME, that Defendant Linn County define mandatory overtime as an essential function of the dispatcher job is not evidence of discriminatory animus toward the plaintiffs, nor does it generate a genuine issue of material fact that Defendant PPME's representation of the plaintiffs during the grievance

---

[10]    The court notes that there is no contention on the part of the plaintiffs that Mr. Rasmussen's refusal to allow representation at the 3rd Step grievance hearing was in violation of the CBA or was a deviation from ordinary practice concerning allowing private counsel to attend such hearings.  Rather, the plaintiffs merely assert that there is a clause in the CBA which permits the presence of requested parties at the third step of the grievance process.  Accordingly, the plaintiffs have not pointed to any evidence which might indicate that Defendant PPME's decision to refuse to allow counsel for the plaintiffs to attend the Step 3 grievance hearing was arbitrary or discriminatory.

process was arbitrary, discriminatory, or in bad faith.  Similarly, the fact that Mr. Rasmussen pursued Mr. McCormick's previous grievance, concerning the fact that he was being forced to work overtime rather than those employees with medical restrictions, is not evidence of discriminatory animus.  Defendant PPME's motion for summary judgment as to Counts I and II of the plaintiffs' complaint is granted.[11]

### Count III: The Plaintiffs' Iowa Public Employment Relations Act Claim

Defendant PPME moves for summary judgment on Count III of the plaintiffs' complaint, which is a claim brought pursuant to the Iowa Public Employment Relations Act,[12] for the alleged breach of the CBA[13] by Defendant PPME.  Defendant PPME asserts that it should be granted summary judgment on this claim because under Iowa law, the Iowa Public Employment Relations Board has exclusive jurisdiction over fair representation claims brought pursuant to Iowa Code § 20.17.[14]  The plaintiffs did not Defendant PPME's motion for summary judgment as to Count III.  Accordingly, Defendant PPME's motion for summary judgment as to Count III of the plaintiffs' complaint is granted.

---

[11] Defendant PPME has also argued that, as a matter of law, it cannot be held liable based on the plaintiffs' claim that it participated in an agreement that precluded accommodation of the plaintiffs' perceived disability.  The court does not reach this question because it finds that the plaintiffs have failed to establish that Defendant PPME regarded them as disabled.

[12] Codified at Iowa Code § 20.17.

[13] Specifically, the plaintiffs allege that Defendant PPME violated Article Three of the CBA.  Article 3 of the CBA, as set forth more fully above in the Statement of Material Facts, contains the anti-discrimination and anti-interference provision of the CBA.

[14] Defendant PPME cites to O'hara v. State of Iowa, et al., 642 N.W.2d 303 (Iowa 2002) (Interpreting Iowa Code § 20.17 and its amendments as follows: "[A] reading of the plain language of chapter 20, as amended, leads to the conclusion that (1) the PERB has exclusive original jurisdiction over a public employee's claim for breach of the fair representation duty against the union.")

Upon the foregoing,

IT IS ORDERED

Defendant PPME's motions for summary judgment (docket number 22 in 04cv0083 and docket number 21 in 04cv0084) are granted. Defendant PPME's motions to strike portions of the affidavits of Plaintiff Molly Allen (docket number 31 in 04cv0083) and Plaintiff Robert Burroughs (docket number 31 in 04cv0084) are granted, except as to paragraph 23 of Plaintiff Molly Allen's affidavit, as set forth in the text of this Order.

June 1, 2006.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT